UNITED STATES DISTRICT COURT

District of Vermont

Robert Lafayette, Plaintiff,

v.

Blueprint Basketball, Byron Robertson, Cara Caswell
Thomas Nuovo

Burlington School District, Joseph Farnham Joseph McNeil

Vermont Elite, Sam Jackson, Joseph McNeil

Winooski School District

Defendants

2:23-CV-631

CIVIL ACTION NO:

## Complaint and Demand for Jury Trial

Plaintiff, Mr. Lafayette (hereinafter referred to as "Plaintiff") files this action against Blueprint Basketball LLC (collectively, "Defendant") for Intentional Infliction of Emotional Distress, Breach of Duty of Care and respectfully alleges as follows:

## I. INTRODUCTION

This action arises under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and includes claims for Intentional Infliction of Emotional Distress (IIED) and Breach of Duty of Care. The Plaintiff, who has sustained multiple traumatic brain injuries, was subjected to discriminatory practices, severe emotional distress, and a breach of duty of care by the Defendants.

This action comes with petitioner bearing a heavy heart, gratitude and grief. Gratitude, for the Court's decision to reconsider this case, previously dismissed without prejudice, and grief for the profound injustices and indignities I have endured. This case, deeply entrenched in the principles of the Americans with Disabilities Act (ADA), is not just a legal battle; it is a father's cry against the relentless tide of discrimination that has besieged my life and that of my child.

This lawsuit against is born out of a harrowing journey marked by petitioners struggles with multiple traumatic brain injuries. It is a story of a father's pain, a pain so deep and raw, stemming from an inability to shield their child from the harsh realities of a world that often turns a blind eye to those who are different. It is a narrative of lost years and missed opportunities, a tale of dreams deferred and potentials unfulfilled, not by choice, but by the cruel hands of discrimination.

The fact that BSD, a body meant to nurture and protect, has funded a program that has been a vessel of discrimination is nothing short of despicable. Their awareness of the injustice, yet continued allowance of such discriminatory practices, casts a dark shadow on the values they purport to uphold. This case is a testament to the systemic failures that have not only inflicted indescribable emotional distress upon petitioner but have also robbed petitioners family of the joy and normalcy that every American is entitled to.

As I bring forth this complaint, it is with a heart laden with sorrow for the years of opportunities lost to the insidious nature of discrimination. The emotional turmoil experienced cannot be overstated—it is a relentless storm that has ravaged the very core of my being, leaving behind a trail of despair and disillusionment. This is not merely a legal dispute; it is a desperate plea for justice, a call to uphold the sanctity of the ADA and to recognize the inherent dignity and worth of every individual, irrespective of their disabilities.

In submitting this complaint, petitioner implore this Court to not only see the legal transgressions but to feel the depth of pain and injustice that has been inflicted. This is a battle for the very soul of our nation's commitment to fairness and equality. It is a plea for recognition, for justice, and for the restoration of the dignity that has been so callously stripped away. This case is the petitioners cry for a world where no father has to witness their child suffer at the hands of discrimination, and where every individual, regardless of their disability, is afforded the respect and opportunities they rightfully deserve.

## II. PARTIES

- Plaintiff is a resident of Vermont.

- Defendants are either residents of Vermont and or a duly constituted Limited Liability Company under the laws of Vermont, and or with their primary business and or location with the county of Chittenden Vermont.

## III. JURISDICTION AND VENUE

Jurisdiction: This Court has jurisdiction over this matter under 28 U.S.C. § 1331 as this case involves a federal question, arising under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and involves claims of Intentional Infliction of Emotional Distress (IIED) and Breach of Duty of Care under federal law.


Venue: Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district, specifically in Vermont where the alleged illegal discrimination and actions leading to the IIED claim took place as well as the demonstrable conspiracy between actor to further the emotional distress of Mr. Lafayette.

## IV. STATEMENT OF FACTS

- The chronological episodes pertinent to this claims are as follows:

    1. In May of 2019 Mr. Lafayette son joined the Blueprint Basketball club.

    2. In late May 2019 as assistant coach, Mr. Lafayette disclosed his traumatic brain injury sustained in 2018 and subsequent limitations to coaching with Blueprint Basketball. Blueprint provided at that time a reasonable accommodation, relieving Mr. Lafayette of game bookkeeping duties.

    3. On June 4th at a Zero Gravity tournament Mr. Lafayette was denied entrance with his therapy animal, Ivan.

        [ Ivan is a black golden retriever/Labrador F1 who joined plaintiffs life after sustaining dual traumatic brain injuries and 14th concussion from basketball. Due to lack of papers for Massachusetts, Zero Gravity refused entry.]

    4. At the June 4th event Mr. Lafayette was warned by a referee at a second game of the day.

[ It's important to also note that officials are human, make errors and have emotions. This referee was on his 8th game of the day in extreme heat with 90% humidity. Admittedly Mr. Lafayette was upset the referee did not heed the safety concerns from the Blueprint coach as Mr. Lafayette sons was sustaining successive full body hits without intervention from officials.]

5.  The official used racial stereotypes, referring to Mr. Lafayette as white-boy twice including the last second to last interaction when he race baited Mr. Lafayette in front of fellow parents, and with Mr. Lafayette being without ESA Ivan, to, "Shut up white-boy." The official instructed Mr. Lafayette to cease speaking.

[The accosting and racial tones given Mr. Lafayette diagnoses Traumatic Brain Injury and Impulsivity Disorder tested Mr. Lafayette in a most profound way.

   A.  Mr. Lafayette obliged the official request to stop making audible grievances of close calls or he would issue a "technical foul" to Mr. Lafayette.

   B.  Mr. Lafayette complied and quietly began to video record the game as nearly all other parents routinely also capture.

   C.  The official became agitated that Mr. Lafayette was now recording and came up to Mr. Lafayette to again instigate an adverse role, demanding to know why Mr. Lafayette was recording.

   D.  Mr. Lafayette feeling directly targeted responded by advising that he wanted to one day show his grandchildren he had met the world's most cold garbage referee to ever live.

   E.  The officials immaturity continued as he instructed Mr. Lafayette to leave the gym in its entirety, which despite obvious legitimacy reservations, Mr. Lafayette immediately complied with said order.]

6.  On Tuesday June 9th the director, Byron Roberson emailed to advise Mr. Lafayette was no longer allowed to be at practices, or games. He asked that Mr. Lafayette respond acknowledging receipt of the email.

[As the program does not record practices or games the ban would arrest the continued growth of Mr. Lafayette's son as a player. The subject of the email was program expectations, yet as of the date of that email no such program expectations were ever

published or provided. Weeks into litigation Blueprint website thereafter reflected the new content, program expectations.]

7.  This communication was much more painful than a person who otherwise does not suffer from post TBI anxiety and panic attacks. Mr. Lafayette immediately called the director to discuss reasoning as

    A.  This was the first time Mr. Lafayette was ever asked to leave by an official.

    B.  The event took place out of state after ADA Reasonable Accommodation was denied and Blueprint has always been aware of the health challenges of Mr. Lafayette.

    C.  Mr. Lafayette has always attended practices as other parents do and there was never a single incident.

    D.  Seeking to explain to the racial baiting and stereotypes and the position of Mr. Lafayette.


8.  After not being able to reach BJ by phone/text Mr. Lafayette impulsive symptomatic behavior replied to the email and advised his disgust with this decision.

9.  Immediately after Mr. Lafayette impulsive, symptomatic behavior wherein an email of criticisms to Blueprint was sent, Mr. Lafayette's son Jack was terminated from the program, and Mr. Lafayette was trespassed from the college based on entirely patently false claims by Cara Caswell and Blueprint Basketball.

10. Blueprint co director Cara Caswell provided uncanny false narratives to both the Saint Michaels public safety and the Colchester Police to secure such a trespass. **[Exhibit A Cara Caswell reports to the police on the phone without being under oath that there is violence and threats being directed at the local college, prompting the Colchester to immediately dispatch cruiser. After, upon interview and now with penalty of perjury Ms. Caswell pivots, admitting that there were no threats, simply critiques.]**

11. June 9th 2022,  Mr. Lafayette, to protect Mr. Lafayette son from missing out on the remainder of the year, emailed the VT Elite coach. As  Mr. Lafayette was planning to have his son reclass or redshirt due to his young age, would have been in 8th grade in the fall and so Mr. Lafayette  contacted the 7th grade coach. VT Elite was excited to welcome Jack.

12. The Lafayette's were told to come starting this and every Friday 7-9 and Mondays 7-9. I explained how grateful we were. While Jack was hurting from being dismissed without any participation in the reason for the dismissal from Blueprint and those relationships, he was taking comfort in rejoining VT Elite. Jack played one spring season with VT Elite.

13. On June 12th after legal counsel, I began to explore with the police department via FOIA the logic and justification for a trespass order. The director, Mr. Roberson was CC'd.

14. At approximately 9:13pm the same June 12th evening, I received an email from VT Elite coach advising that Blueprint has put out an alert email about myself and son Jack. Evidently it appears the FOIA investigation triggered or gave Mr. Roberson an urge to further escalate the situation and he alone engaged in retaliatory measures. VT Elite coach said they could no longer accept Mr. Lafayette's son. At that point Mr. Lafayette emailed the VT Elite director, Sam Jackson. **(Exhibit B and C BJ Robertson and Blueprint Basketball and Cara Caswell authored a public statement disclosing Mr. Lafayette's health and symptomatic behavior and encouraging all organizations to not accept Mr. Lafayette's son.)**

15. Sam advised Mr. Lafayette needed to work things out with BJ and that he "could not get involved another organization." Confirming the offer to join VT Elite is no longer on the table. Sam also made reference that Blueprint publicized the no trespass to all coaches in that email. This was in an apparent attempt to achieve Mr. Roberson goals that no team takes Mr. Lafayette's son and to isolate Jack.

16. On Monday at 7:22am Sam advised the Blueprint alert to all VT coaches via email contained "heavy concerns" and hoped I could "understand based upon what was released from Blueprint" to not get involved. He would also state "He feels bad for Jack whose stuck in the middle of a situation." **(Exhibit C Evidence of Resulting Harm From Blueprint Breach of Duty of Care, Dissemination of Personal Private Identifiable Information of Plaintiff)**

17. From August 2023 until early February several lawyers attempted to engage BJ Robertson and Cara Caswell and Blueprint Basketball attorney Tom Nuovo in an interactive process to create a reasonable accommodation instead of termination of both Mr Lafayette and his son. **(Exhibit D attorneys fruitless attempts to engage Blueprint to ultimately reach an arrangement which comports to law and stops the disability discrimination)**

18. After two attorneys had failed to illicit a response from Blueprint, VT Elite in April of 2023 permitted JL to attend but only at his grade level. JL would be named to the all-tournament team in the USA Open Qualifier Albany NY and received invitation to compete and train by two regional AAU programs by club directors. [These clubs are in Albany region and require a 3 hour drive both ways for Mr. Lafayette's son to realize proportionate playing opportunities equal to his Vermont peers.]

19. Attorney Nuovo has at all times directed his clients, aided and abetted all illegal discriminatory actions including the continued disability discrimination including the breach of duty of care and was the official who first brought the conception of a public email to defame and harm Mr. Lafayette and his son which was ultimately drafted, sent, received and acted upon.

20. Before the start of the fall 2023 season Blueprint provided scholarships to recruit away the other two players on the VT Elite 2026 team which also are Mr. Lafayette's sons' closest friends and classmates. The scholarships were offered with surgical precision to ensure VT Elite would not have enough players to compete meaningfully and to further isolate Mr. Lafayette son and further the pain endured by Mr. Lafayette.

    1. In fall of 2023 Sam Jackson communicated via co defendant Joseph McNeil that Mr. Lafayette's son could not play up despite being ranked top three in the state for his grade and despite that no team would be available to play for. Simultaneously Sam permitted younger players than JL to participate at the level Mr. Lafayette sought. Mr. Lafayette would be forced to travel to Albany NY to have his son find appropriate competition.

21. The outrageous acts against Mr. Lafayette's son directly resulted in Mr. Lafayette's unmanageable stress, extreme physical pain, aggravation of existing medical conditions, culminating in eight hospitalizations via ambulatory care, June 2022-March 2023. Exhibit E

22. Despite attempts to resolve the issue before, during and after judicial remedies were first being sought attorney's McNeil, Nuovo and Farnham who have been aware of all relevant facts at all times have continued colluded to enrich their clients and insulate Mr. Lafayette's son from competition. Most crucially, in September 2023, Blueprint Grassroots Future league, commenced after the school year began funded in part by the Burlington School and in concert with their attorneys again discriminated against Mr. Lafayette son from participation. The league was otherwise open to the public, teams grouped based on school with Mr. Lafayette son being solely excluded based on association to a parent with a

disability. This resulted in Mr. Lafayette psychiatric care being worsened and referrals to partial inpatient therapy made by Dr. Hardy.

23. In September 2023, Mr. Lafayette attempted to leverage the Burlington School Districts equity program. The request submitted was for proportional access to facilities to train for Mr. Lafayette son who is a resident of Burlington and is being actively discriminated against by the districts employee and the employees club which the district funds. Mr. Lafayette alternatively requested that the district enforce its own conduct expectations of personnel which would preclude active, calculated discrimination of a child.

## V. CAUSE OF ACTION

### Count I - Intentional Infliction of Emotional Distress (IIED):

- Plaintiff repeats and reiterates paragraphs 1 through 23 as fully stated herein.
- Defendants' actions were extreme and outrageous, intentionally or recklessly causing severe emotional distress to the Plaintiff.
- Due to the behavior of the Defendant, the Plaintiff suffered severe emotional distress, physical harm resulting in eight hospitalizations from June 2022 to March 2023.
- Physical Manifestation requiring hospitalizations and ongoing psychiatric care:
    1. JUL 1 2022 Emergency Department UVM Medical Center Emergency Department - Main Campus
    2. JUL 17 2022 Emergency Department UVM Medical Center Emergency Department - Main Campus
    3. AUG 8 2022 Emergency Department UVM Medical Center Emergency Department - Main Campus
    4. AUG 26 2022 Emergency Department UVM Medical Center Emergency Department - Main Campus
    5. DEC 7 2022 Emergency Department UVM Medical Center Emergency Department - Main Campus
    6. DEC 11 2022 Emergency Department UVM Medical Center Emergency Department - Main Campus
    7. FEB 27 2023 Emergency Department UVM Medical Center Emergency Department - Main Campus

8. MAR 1 2023 Emergency Department UVM Medical Center Emergency Department - Main Campus

- Ongoing psychiatric care by Dr. Hardy, expert witness at trial will demonstrate the direct link of the emergency department visits and Mr. Lafayette's mental health plight from the harm onto Mr. Lafayette's son and the child's chronic suffering.

REMEDY REQUESTED

WHEREFORE, Plaintiff, Mr. Lafayette, respectfully demands that this Court:

1. Plaintiff seeks compensatory and punitive damages for emotional distress, breach of of duty of care, and other harms suffered.
2. Injunctive Relief: Plaintiff requests [specify the injunctive relief sought, e.g., reinstatement to the program, prohibition against further discriminatory practices].
3. Summary judgement that the dismissal of Mr. Lafayette's son did not comport with ADA , see PGA Tour, Inc. v. Martin, 532 U.S. 661,  and enjoin Blueprint Basketball to reinstate Mr. Lafayette's son forthwith.
4. Such further relief as this Court may deem just and equitable.

### Count II – Conspiracy to violate Americans with Disability Act

1. Plaintiff repeats and reiterates paragraphs 1 through 23 as if fully stated herein.
2. Defendants have observably in concert collective conspired to halt, arrest menace with the development of Mr. Lafayette family due to diagnosed, documented symptomatic behavior of impulsivity. The disorder is a result of several head injuries and one traumatic brain injury.
3. Mr. Lafayette's rights were violated when the club refused a reasonable accommodation throughout 2022, 2023 and after previously providing a reasonable accommodation in 2019.
4. Mr. Lafayette's rights were violated under the act by limiting he and due to association his sons participation in club activities.

REMEDY REQUESTED

WHEREFORE, Plaintiff, Mr. Lafayette, respectfully demands that this Court enter judgment against all Defendants and award:

1. Compensatory damages;
2. Punitive damages;

3. Pre- and post-judgment interest as allowed by law;

4. Such further relief as this Court may deem just and equitable.

## Count III - Breach of Duty of Care

5. Plaintiff repeats and reiterates paragraphs 1 through 23 as if fully stated herein.

6. Defendants owed a duty of care to the Plaintiff, as established in the principles set out in Jackson v. Righter, 891 P.2d 1387 (1995) which confirmed that a duty of care arises when a relationship exists which gives rise to a legal obligation to act in a manner that it can reasonably be foreseen would injure others.

7. This relationship was breached when Defendant acted intentionally to discriminate against petitioner son, leading to Plaintiff's emotional distress.

REMEDY REQUESTED

WHEREFORE, Plaintiff, Mr. Lafayette, respectfully demands that this Court enter judgment against Defendant Blueprint Basketball LLC and award:

5. Compensatory damages;

6. Punitive damages;

7. Pre- and post-judgment interest as allowed by law;

8. Such further relief as this Court may deem just and equitable.

## Count IV – Due Process Violation

1. Plaintiff repeats and reiterates paragraphs 1 through 23 as if fully stated herein.

2. Defendant BSD violated plaintiff's right to due process by not enforcing the conduct personnel which prohibit discriminatory acts to community members.

3. This relationship was breached when Defendant acted intentionally to discriminate against petitioner son, leading to Plaintiff's emotional distress.

REMEDY REQUESTED

WHEREFORE, Plaintiff, Mr. Lafayette, respectfully demands that this Court enter judgment against Defendant Burlington School District and award:

1. Compensatory damages;

2. Punitive damages;

3. Pre- and post-judgment interest as allowed by law;

4. Such further relief as this Court may deem just and equitable.


### Count V – Violation of the Americans with Disability Act

1. Plaintiff repeats and reiterates paragraphs 1 through 23 as if fully stated herein.
2. Defendants VT Elite, Blueprint Basketball violated plaintiff's right under the Americans with Disability Act.
3. Petitioner rights were violated when the programs collaborated via email and engaged in isolation of Mr. Lafayette's family due to his symptomatic behavior tied directly to his qualified disability.

REMEDY REQUESTED

WHEREFORE, Plaintiff, Mr. Lafayette, respectfully demands that this Court enter judgment against Defendant Burlington School District and award:

1. Compensatory damages;

2. Punitive damages;

3. Pre- and post-judgment interest as allowed by law;

4. Such further relief as this Court may deem just and equitable.


### Count VI – Intentional Infliction of Emotional Distress

1. Plaintiff repeats and reiterates paragraphs 1 through 23 as if fully stated herein.
2. Defendant Burlington School District is vicariously liable by their employee actions, leader of basketball operations for the school district actions in October to further the discrimination of Mr. Lafayette's family during another fall league otherwise open to the public.
3. The school finances and funds the club program and retains the employee in a position of leadership in the public eye.


REMEDY REQUESTED

WHEREFORE, Plaintiff, Mr. Lafayette, respectfully demands that this Court enter judgment against Defendant Burlington School District and award:

1. Compensatory damages;

2. Punitive damages;

3. Pre- and post-judgment interest as allowed by law;

4. Such further relief as this Court may deem just and equitable.


### Count VII – Violation of the American's with Disability Act

1. Plaintiff repeats and reiterates paragraphs 1 through 23 as if fully stated herein.
2. Defendant Winooski School District is vicariously liable by their employee actions, leader of basketball operations for the school district who in September of 2023 communicated through co-defendant Joseph McNeil that despite objectively adequate talent, that routinely other club members are permitted to play a grade level higher, Sam refused to permit Mr. Lafayette son to play during the fall of 2023.


REMEDY REQUESTED

WHEREFORE, Plaintiff, Mr. Lafayette, respectfully demands that this Court enter judgment against Defendant Winooski School District and award:

5. Compensatory damages;

6. Punitive damages;

7. Pre- and post-judgment interest as allowed by law;

8. Such further relief as this Court may deem just and equitable.


A jury trial is demanded on all counts so triable.

Dated this 20th day of August, **2023**.

Respectfully submitted,

Robert Lafayette    11/15/23

Exhibit A

**Initial Call Information - [Threats/Harassment] 06/09/22 14:45 : 132 Campus Rd, Colchester, VT**



3/21/23, 2:01 PM                                22CC003853: Threats/Harassment

*Dispatch Narratives*

———— 1604: Sirois, John - 06/09/22 14:49 ————
Cara wants to talk to someone about a parent they have in their basketball program who has been kicked out several times from practices and games for being unruly. He is now sending threatening messages to the coaches. They primarily practice at SMC and are having to cancel practices because of it.

*MRI#*            *NCIC NIC#*        *Narrative*            ☐ *Cancelled*


3/21/23, 2:01 PM                                22CC003853: Threats/Harassment

*Narrative Type*      *Officer*                *Narrative Template*
Report              m168: Barriere  ☐
                              *Confidential*

Narrative

I spoke with Cara, who runs a traveling basketball organization that practices at St. Michael's College. One of the parents (Robert) had been kicked out of several games and has caused several problems, so Cara sent Robert an email advising him that his son could continue to play, but Robert could not spectate.

Robert got upset and began to send emails back, which Cara advised did not have any direct threats. Robert was just "shit talking", but because of his past behaviors they wanted him trespassed from St. Michael's College, so they would not have any problems during practice.

I spoke with Public Safety and they gave me permission to trespass Robert from the college. I called Robert and verbally trespassed him, which he advised he understood.

End of report.

| *Offense Suspect* | *Offense Victim* | *LBR Victim-Offender* | | *Bias/Motivation (anti)* |
|---|---|---|---|---|
| K was LEO | V was LEO Assignment | | Other O&I | LEOKA Narrative |

Exhibit B

 **Gmail**

Bob Lafayette <bob@allytechvt.com>

---

**Ball**

9 messages

---

**Troy Brown** <blkmamba2423@gmail.com>                    Fri, Jun 10, 9:27 AM
To: Bob Lafyatte <Bob@allytechvt.com>

We practice Monday 7-9 & Friday 7-9. Edmund's gym closed for repairs or graduation I'm
not sure but we will start back next Friday. Working on a time for training session outdoors.
The kids actually get really disappointed when we don't have practice. They are some gym
rats for real & we have fun while we train. We got this tournament coming up, it's a big one
some good competition. We been blowing teams out so it's good for them to get tested. If
your son wants to come and your available let me know asap and I will add him to yet team
list and send hotel info.

---

**Bob Lafayette** <bob@allytechvt.com>                    Sun, Jun 12, 6:57 PM
To: Troy Brown <blkmamba2423@gmail.com>

Hey Troy,

We are in. Jack really respects Paskell and Mo. He's excited to join up. I can't beat him 1v1
anymore so we are doing less of that and more skill situation building in addition to the
vertical jump.

One item, eligibility. We want to be sure to be compliant with and all rules. I can provide proof
of application tuition etc to the private institution if needed? By rule if out of age you need a
waiver. If your experience has been that the tournaments are namely by self attention I
suppose its a non-issue.

Were' excited man. PS got a vt elite store? I'd like to buy some gear for him and I so there's
no question of commitment. Can't wait for you to see him play defense!

See you Friday at 7pm! Thank you!!
[Quoted text hidden]

<blkmamba2423@gmail.com>                                    Sun, Jun 12, 9:13 PM
To: Bob Lafayette <bob@allytechvt.com>

Hey you know your my boy so I'm a be straight with you. I need this to be kept between you
and I but there is an alert going out to teams about you about this recent events. And

unfortunately it's out of my hands and I can't take him. I wish you had come to us before
blueprint because I know things would have been different. Best of luck and if there is any
thing I can do to help I will. Unfortunately you waited too late to play with us. Take care and
know I'm always on your side.

On Jun 12, 2022, at 6:57 PM, Bob Lafayette <bob@allytechvt.com> wrote:


Hey Troy,

We are in. Jack really respects Paskell and Mo. He's excited to join up. I can't beat
him 1v1 anymore so we are doing less of that and more skill situation building in
addition to the vertical jump.

One item, eligibility. We want to be sure to be compliant with and all rules. I can
provide proof of application tuition etc to the private institution if needed? By rule
if out of age you need a waiver. If your experience has been that the tournaments
are namely by self attention I suppose its a non-issue.

Were' excited man. PS got a vt elite store? I'd like to buy some gear for him and I
so there's no question of commitment. Can't wait for you to see him play defense!

See you Friday at 7pm! Thank you!!

**Bob Lafayette** <bob@allytechvt.com>                    Sun, Jun 12, 9:28 PM
To: <blkmamba2423@gmail.com>

I'd agree to zero tolerance for games and to not attend practices. Otherwise Jacks Out of all options.

Says summer starts soon on the page. LMK. Please please
[Quoted text hidden]

**Troy Brown** <blkmamba2423@gmail.com>                    Sun, Jun 12, 9:42 PM
To: Bob Lafayette <bob@allytechvt.com>

You can try talking to Sam but it's literally completely out of my hands.

[Quoted text hidden]

**Bob Lafayette** <bob@allytechvt.com>                    Sun, Jun 12, 9:46 PM
To: Troy Brown <blkmamba2423@gmail.com>

Not sure on summer eligibility anyways. I've asked Sam to consider him for the fall. Asked for a meeting to discuss.

I know it is out of your hands bro. Really understand.
[Quoted text hidden]

**Bob Lafayette** <bob@allytechvt.com>                    Sun, Jun 12, 10:09 PM
Draft To: <blkmamba2423@gmail.com>

We have
[Quoted text hidden]

**Bob Lafayette** <bob@allytechvt.com>                    Mon, Jun 13, 12:08 PM
To: Troy Brown <blkmamba2423@gmail.com>

FYI Sam also told me about blueprints alert email.

Seems he wants to isolate Jack from all hoops. Just going through he appeals with AAU. Spoke to the new england governor, he was shocked to say the least.

Jack was so excited to work with Mo and Pharrell and Paskel.

We will see what happens next. Much love bro. The moment you fractured my skull I just knew we'd be friends forever hahahhahaha

Exhibit C

 Gmail

**Bob Lafayette <bob@allytechvt.com>**

---

**Fall AAU**
7 messages

---

**Bob Lafayette <bob@allytechvt.com>**                          Mon, Jun 13, 6:27 AM
To: bhscoachj <bhscoachj@aol.com>

Hey Sam I am hoping you can give Jack an opportunity to play in the fall for 8th grade.

I would agree to stay off and away from all practices and venues that don't permit my
therapy animal - the black lab you met at apple tree . My father and I and Jack would like to
have a meeting. We are aware of the retaliatory emails communicating to not accept Jack
from blueprint.

We've reached out to the AAU about direction here. Jack is attending CKS for the 2022-
2023 year as an 8th grader reclassifying.
[Quoted text hidden]

---

**bhscoachj <bhscoachj@aol.com>**                          Mon, Jun 13, 7:22 AM
To: Bob Lafayette <bob@allytechvt.com>

Bob, thanks for your email. I am aware of some issues and heard there is a no trespassing
order intact.

VT ELITE will not get involved in this situation.

I do feel bad for Jack who is caught in the middle of a situation. My recommendation is to
speak with BJ and work it out.

Thanks,
Coach J
[Quoted text hidden]

**Bob Lafayette** <bob@allytechvt.com>                    Mon, Jun 13, 8:37 AM
To: bhscoachj <bhscoachj@aol.com>

Hey Sam,

So are you feeling Jack could try out for your club if the trespass was withdrawn?

Bj will not take us back under any terms.  Blueprint is long done.

---

Jack needs  an opportunity. We need to move on from blueprint and the issues that arise
from perceived unfairness, lack of communication, absent coaches, players, playable floors
etc.

Let me know your thoughts? The other coaches Eck and Chris are also willing to speak to
you and advocate. They're not in agreement and are permitting  jack to play in the Essex
league.
[Quoted text hidden]

---

**Bob Lafayette** <bob@allytechvt.com>                    Mon, Jun 13, 8:50 AM
To: bhscoachj <bhscoachj@aol.com>

Thanks for your email sir. I hope we find a path forward for JL.

Other coaches are meeting with BJ tomorrow to discuss. It's again not that all were in
agreement and only after I was critical of BJ that he independently terminated Jack and
rolled public safety without cause. Until that point I was not allowed at BP but Jack was.

That's all I should say for now.

https://image.aausports.org/codebook/national_policies.pdf

**bhscoachj** <bhscoachj@aol.com>                                     Mon, Jun 13, 9:40 AM
To: Bob Lafayette <bob@allytechvt.com>

Bobby, again thanks for your email. At this time we will not get involved in this situation. I
hope you guys can figure out next best steps, to move forward.

It seems like from the public statement that they release there are some heavy concerns. We
don't want to involve our organization in this matter.

I hope you can understand our concerns base on what was released.

Thanks
[Quoted text hidden]

---

**Bob Lafayette** <bob@allytechvt.com>                               Mon, Jun 13, 10:00 AM
To: bhscoachj <bhscoachj@aol.com>

This breaks my heart.

I have not seen the communication only a couple have told me about it and rescinded
practice offers. What was shared? Any concerns of Jack? He's innocent and doesn't deserve
to be neglected abused due to my electronic communication.

So Jack can never ever play for you after the email? If each director on the email had some
position Jack can never play basketball again in aau then?

Could you please take some time and consider. I am trying to gather the public records
which will show facts, not opinion for the trespass from the Colchester PD. They said it
should be shortly.

Debra Kimbrell is assisting from the national office. We have filed the player abuse forms
against blueprint exhausting administrative is required and to force arbitration per AAU
policy. Jack is innocent and doesn't deserve to be banned from all AAU. Jack's mother and
grandfather can easily bring him and I'll stay away.

I want to move forward absent legal bullshit. I just need a solution for an innocent kid named Jack to play. Next year him and Mo and Paskell will be the best 8th graders. I know the coach was also excited as was Jack when I shared we were invited.

I hope you can consider a path where I am not forced to appeal to the AAU for help. I don't want the headaches. I'll stay far far away and provide an extra donation. I'll redo your website as well so its mobile friendly, responsive and rank higher. Literally I'd like to offer anything than having to fight more.

Just want jack to hoop. He's done nothing but win games, lead on defense, committed to his academics. He is innocent.

I understand if you can't, I hope you understand I can't just stand by and let Jack fall off after all of his extraordinary gains.

You will always be special to me. I pray we find a path forward.


[Quoted text hidden]

---

**bhscoachj** <bhscoachj@aol.com>                                    Mon, Jun 13, 11:03 AM
To: Bob Lafayette <bob@allytechvt.com>

I hear ya! I hope you can understand our position. This seems like a continuous situation with a kid stuck in the middle. I have no control of what other programs do. AAU will have that ability.

If you are dealing with AAU they may have recommendations on next steps.

I think it is important to keep advocating for your son. Hopefully this situation get resolved quickly. Let me know aau resolution to this situation. I hate that a child is stuck in the middle.

But for me and our organization it's never good to get involved in other organizations.

Bobby, you know I respect you as well. This is a tough position to put me in. Let me know how AAU will help you to move forward.
[Quoted text hidden]

Exhibit E

