UNITED STATES DISTRICT COURT

District of Vermont

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2024 FEB 12 PM 2:26
CLERK
BY_____
DEPUTY CLERK

Robert Lafayette, Plaintiff,

v.

Blueprint Basketball, Byron Robertson, Cara Caswell

Vermont Elite, Sam Jackson

Defendants

CIVIL ACTION NO: 2:23-cv-00631-gwc

**Complaint and Demand for Jury Trial**

Plaintiff, Mr. Lafayette (hereinafter referred to as "Plaintiff") files this action against Blueprint Basketball LLC (collectively, "Defendant") for Intentional Infliction of Emotional Distress, Breach of Duty of Care and respectfully alleges as follows:

I. INTRODUCTION

This action arises under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and includes claims for Intentional Infliction of Emotional Distress (IIED) and Breach of Duty of Care. The Plaintiff, as demonstrated by **EXHIBIT' F-H**, is a disabled persons under the ADA who has multiple mental dx which present incredible challenges in daily life. The plaintiff is diagnosed with impulsivity and anxiety which as a result has substantially limited several major life activities including:

- Working
- Interacting with Others
- Concentrating and Thinking
- Sleeping
- Performing Manual Tasks
- Communication
- Regulating Emotions
- Caring for Oneself.

## II. PARTIES

- Plaintiff is a resident of Vermont.

- Plaintiff is a disabled persons as defined under the Americans with Disability Act

- Defendants are either residents of Vermont and or a duly constituted Limited Liability Company under the laws of Vermont, and or with their primary business and or location with the county of Chittenden Vermont.

- Defendants youth basketball clubs are subject to Americans with Disabilities Act under Title III as private entities that are open to public participation and hosts or participates in tournaments which tournaments are also open to the public.

## III. JURISDICTION AND VENUE

Jurisdiction: This Court has jurisdiction over this matter under 28 U.S.C. § 1331 as this case involves a federal question, arising under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and involves claims under federal law.

Venue: Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district, specifically in Vermont where the alleged illegal discrimination and actions occurred.

## IV. STATEMENT OF FACTS

The chronological episodes pertinent to this claims are as follows:

1. In May of 2019 Mr. Lafayette son joined the Blueprint Basketball club.

2. In late May 2019 as assistant coach, Mr. Lafayette disclosed his traumatic brain injury sustained in 2018 and subsequent limitations to coaching with Blueprint Basketball. These symptoms rendered Mr. Lafayette disabled **(Exhibit G Psychiatrist Letter affirming Mr. Lafayette meets the definition of disabled under the ADA)** and significantly limit several major life activities including: Working, Interacting with Others, Concentrating and Thinking, Sleeping,

Performing Manual Tasks, Communication, Regulating Emotions, Caring for Oneself. **(Exhibit H psychiatric provider, Laura Hardy's medical assessment summary which unequivocally ties Mr. Lafayette health diagnoses of TBI, Anxiety, Impulsivity which severely limit several major life activities including communication and interacting with others and emotional regulation.)**

3. Blueprint Basketball Club in 2019 provided at that time a reasonable accommodation, relieving Mr. Lafayette of game bookkeeping duties normal for the assistant coach.

4. On June 4th at a Zero Gravity tournament Mr. Lafayette was denied entrance with his therapy animal, Ivan.

    [ Ivan is a black golden retriever/Labrador F1 who joined plaintiffs life after sustaining dual traumatic brain injuries and 14th concussion from basketball. Due to lack of papers for Massachusetts, Zero Gravity refused entry.]

5. At the June 4th event Mr. Lafayette was warned by a referee at a second game of the day.

    [ It's important to also note that officials are human, make errors and have emotions. This referee was on his 8th game of the day in extreme heat with 90% humidity. Admittedly Mr. Lafayette was upset the referee did not heed the safety concerns from the Blueprint coach as Mr. Lafayette sons was sustaining successive full body hits without intervention from officials.]

6. The official used racial stereotypes, referring to Mr. Lafayette as white-boy twice including the last second to last interaction when he race baited Mr. Lafayette in front of fellow parents, and with Mr. Lafayette being without ESA Ivan, to, "Shut up white-boy." The official instructed Mr. Lafayette to cease speaking.

    [The accosting and racial tones given Mr. Lafayette diagnoses Traumatic Brain Injury and Impulsivity Disorder tested Mr. Lafayette in a most profound way.

    A. Mr. Lafayette obliged the official request to stop making audible grievances of close calls or he would issue a "technical foul" to Mr. Lafayette.

    B. Mr. Lafayette complied and quietly began to video record the game as nearly all other parents routinely also capture.

    C. The official became agitated that Mr. Lafayette was now recording and came up to Mr. Lafayette to again instigate an adverse role, demanding to know why Mr. Lafayette was recording.

    D. Mr. Lafayette feeling directly targeted responded by advising that he wanted to one day show his grandchildren he had met the world's most cold garbage referee to ever live.

    E. The officials immaturity continued as he instructed Mr. Lafayette to leave the gym in its entirety, which despite obvious legitimacy reservations, Mr. Lafayette immediately complied with said order.]

7. On Tuesday June 9th the director, Byron Roberson emailed to advise Mr. Lafayette was no longer allowed to be at practices, or games. He asked that Mr. Lafayette respond acknowledging receipt of the email. The email from the covered entity under Title III of the ADA stated the cause was due to Mr. Lafayette's emails. **(Exhibit I Blueprint Basketball terminating Mr. Lafayette and child due email(s) sent by Mr. Lafayette.)**

[As the program does not record practices or games the ban would arrest the continued growth of Mr. Lafayette's son as a player. The subject of the email was program expectations, yet as of the date of that email no such program expectations were ever published or provided. Weeks into litigation Blueprint website thereafter reflected the new content, program expectations.]

8. This communication was much more painful than a person who otherwise does not suffer from post TBI anxiety and panic attacks. Mr. Lafayette immediately called the director to discuss reasoning as

    A. This was the first time Mr. Lafayette was ever asked to leave by an official.

    B. The event took place out of state after ADA Reasonable Accommodation was denied and Blueprint has always been aware of the health challenges of Mr. Lafayette.

    C. Mr. Lafayette has always attended practices as other parents do and there was never a single incident.

    D. Seeking to explain to the racial baiting and stereotypes and the position of Mr. Lafayette.

9. After not being able to reach BJ by phone/text Mr. Lafayette impulsive symptomatic behavior replied to the email and advised his disgust with this decision.

10. Immediately after Mr. Lafayette impulsive, symptomatic behavior wherein an email of criticisms to Blueprint was sent, Mr. Lafayette's son Jack was terminated from the program, and Mr. Lafayette was trespassed from the college based on entirely patently false claims by Cara Caswell and Blueprint Basketball.

11. Blueprint co director Cara Caswell provided uncanny false narratives to both the Saint Michaels public safety and the Colchester Police to secure such a trespass. [**Exhibit A Cara Caswell reports to the police on the phone without being under oath that there is violence and threats being directed at the local college, prompting the Colchester to immediately dispatch cruiser. After, upon interview and now with penalty of perjury Ms. Caswell pivots, admitting that there were no threats, simply critiques.**]

12. June 9th 2022, Mr. Lafayette, to protect against Mr. Lafayette son from missing out on the remainder of the year, emailed the VT Elite coach. As Mr. Lafayette was planning to have his son reclass or redshirt due to his young age, would have been in 8th grade in the fall and so Mr. Lafayette contacted the 7th grade coach. VT Elite was excited to welcome Jack.

13. The Lafayette's were told to come starting this and every Friday 7-9 and Mondays 7-9. I explained how grateful we were. While Jack was hurting from being dismissed without any participation in the reason for the dismissal from Blueprint and those relationships, he was taking comfort in rejoining VT Elite. Jack played one spring season with VT Elite.

14. On June 12th after legal counsel, I began to explore with the police department via FOIA the logic and justification for a trespass order. The director, Mr. Roberson was CC'd.

15. At approximately 9:13pm the same June 12th evening, I received an email from VT Elite coach advising that Blueprint has put out an alert email about myself and son Jack. Evidently it appears the FOIA investigation triggered or gave Mr. Roberson an urge to further escalate the situation and he alone engaged in retaliatory measures. VT Elite coach said they could no longer accept Mr. Lafayette's son. At that point Mr. Lafayette emailed the VT Elite director, Sam Jackson. (**Exhibit B and C BJ Robertson and Blueprint Basketball and Cara Caswell authored a public statement disclosing Mr. Lafayette's health and symptomatic behavior and encouraging all organizations to not accept Mr. Lafayette's son.**)

16. Sam advised Mr. Lafayette needed to work things out with BJ and that he "could not get involved another organization." Confirming the offer to join VT Elite is no longer on the table. Sam also made reference that Blueprint publicized the no trespass to all coaches in that email. This was in an apparent attempt to achieve Mr. Roberson goals that no team takes Mr. Lafayette's son and to isolate Jack.

17. On Monday at 7:22am Sam advised the Blueprint alert to all VT coaches via email contained "heavy concerns" and hoped I could "understand based upon what was released from Blueprint" to not get involved. He would also state "He feels bad for Jack whose stuck in the middle of a situation." **(Exhibit C Evidence of Resulting Harm From Blueprint Breach of Duty of Care, Dissemination of Personal Private Identifiable Information of Plaintiff)**

18. From August 2023 until early February several lawyers attempted to engage BJ Robertson and Cara Caswell and Blueprint Basketball attorney Tom Nuovo in an interactive process to create a reasonable accommodation instead of termination of both Mr Lafayette and his son. **(Exhibit D attorneys fruitless attempts to engage Blueprint to ultimately reach an arrangement which comports to law and stops the disability discrimination)**

19. After two attorneys had failed to illicit a response from Blueprint, VT Elite in April of 2023 permitted JL to attend but only at his grade level. JL would be named to the all-tournament team in the USA Open Qualifier Albany NY and received invitation to compete and train by two regional AAU programs by club directors. [These clubs are in Albany region and require a 3 hour drive both ways for Mr. Lafayette's son to realize proportionate playing opportunities equal to his Vermont peers.]

20. Attorney Nuovo has at all times directed his clients, aided and abetted all illegal discriminatory actions including the continued disability discrimination including the breach of duty of care and was the official who first brought the conception of a public email to defame and harm Mr. Lafayette and his son which was ultimately drafted, sent, received and acted upon.

21. Before the start of the fall 2023 season Blueprint provided scholarships to recruit away the other two players on the VT Elite 2026 team which also are Mr. Lafayette's sons' closest friends and classmates. The scholarships were offered with surgical precision to ensure VT Elite would not have enough players to compete meaningfully and to further isolate Mr. Lafayette son and further the pain endured by Mr. Lafayette.

1. In fall of 2023 Sam Jackson communicated via co defendant Joseph McNeil that Mr. Lafayette's son could not play up despite being ranked top three in the state for his grade and despite that no team would be available to play for. Simultaneously Sam permitted younger players than JL to participate at the level Mr. Lafayette sought. Mr. Lafayette would be forced to travel to Albany NY to have his son find appropriate competition.

22. The outrageous acts against Mr. Lafayette's son directly resulted in Mr. Lafayette's unmanageable stress, extreme physical pain, aggravation of existing medical conditions, culminating in eight hospitalizations via ambulatory care, June 2022-March 2023. Exhibit E

23. Despite attempts to resolve the issue before, during and after judicial remedies were first being sought attorney's McNeil, Nuovo and Farnham who have been aware of all relevant facts at all times have continued colluded to enrich their clients and insulate Mr. Lafayette's son from competition. Most crucially, in September 2023, Blueprint Grassroots Future league, commenced after the school year began funded in part by the Burlington School and in concert with their attorneys again discriminated against Mr. Lafayette son from participation. The league was otherwise open to the public, teams grouped based on school with Mr. Lafayette son being solely excluded based on association to a parent with a disability. This resulted in Mr. Lafayette psychiatric care being worsened and referrals to partial inpatient therapy made by Dr. Hardy.

24. In September 2023, Mr. Lafayette attempted to leverage the Burlington School Districts equity program. The request submitted was for proportional access to facilities to train for Mr. Lafayette son who is a resident of Burlington and is being actively discriminated against by the districts employee and the employees club which the district funds. Mr. Lafayette alternatively requested that the district enforce its own conduct expectations of personnel which would preclude active, calculated discrimination of a child.

## V. CAUSE OF ACTION

### Count I – Violation of the Americans with Disability Act

1. Plaintiff repeats and reiterates paragraphs 1 through 23 as if fully stated herein.

2. As stated previously, Exhibit G and Exhibit H demonstrate Plaintiff is disabled and has severe health challenges which cause significant limitation with several major life activities.

3. Defendants VT Elite, Blueprint Basketball are covered entities under the ADA Title III. They are private clubs who have offerings to the general public and participate and host tournaments open to the public.

4. Petitioner rights were violated when Blueprint Basketball Club banned Mr. Lafayette and his child for emails from petitioner to the club that were critical in nature and that equally were the hallmarks of Mr. Lafayette disabilities, namely emotion regulation, communication and interacting with others. **(Exhibit H Medical Assessment Unsigned due to restrictions from her employer, CHCB, of Mr. Lafayette concurred by Mr. Lafayette's qualified mental health provider, Laura Hardy APRN, PMHNP linking Mr. Lafayette disabilities (impulse disorder/anxiety/mood disorder to conduct observed and significant limitations with several major life activities.)**

    a. **Prohibition of Discrimination**: Title III was violated which prohibits discrimination against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. 42 U.S.C. § 12182, states:

    "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

    b. **Associative Discrimination**: The ADA protects individuals from discrimination based on their association with a person with a disability. By their actions or inactions Blueprint Basketball club violated Mr. Lafayette's rights under 42 U.S.C. § 12112(b)(4). The club's decision to ban Mr. Lafayette and Mr. Lafayette's child was influenced by Mr. Lafayette's disability (e.g., a reaction to behavior stemming from his disability), constitutes associative discrimination. **(Exhibit I Blueprint Email Terminating Mr. Lafayette and Mr. Lafayette son due to Mr. Lafayette email.)** The ADA recognizes that discrimination against an individual because of their relationship or association with a person with a known disability is prohibited.

5. Petitioners rights were further violated by the Defendants refusal to approve subsequent repeated requests for a reasonable accommodation as required in the precedent PGA v Martin. Whereas the private sports organization open to the public failed to provide a reasonable accommodation for a member of the public.

REMEDY REQUESTED

WHEREFORE, Plaintiff, Mr. Lafayette, respectfully demands that this Court enter judgment against Defendants Blueprint Basketball, Cara Caswell, BJ Robertson, Sam Jackson and VT Elite and award:

1. Compensatory damages; of $200,000.00
2. Punitive damages of $500,000;
3. Preliminary order enjoining defendants from continued associative discrimination and reinstatement of Mr. Lafayette's child.
4. Pre- and post-judgment interest as allowed by law;
5. Such further relief as this Court may deem just and equitable.

### Count II Breach of Duty of Care:

- Plaintiff repeats and reiterates paragraphs 1 through 23 as fully stated herein.
- A special relationship was created between Blueprint Basketball and Robert Lafayette since 2019 when Mr. Lafayette was retained as coach in volunteer employment capacity.
- This special relationship deepened upon the disclosure of Mr. Lafayette disability and request of a reasonable accommodation.
- A special relationship is implied between parents of youth groups entrusted to supervision, and a duty of care to take reasonable steps to protect the wellbeing of its members.
- As set forth in Doe v. U.S. Youth Soccer Ass'n, Inc., 8 Cal.App.5th 1118 (2017) youth groups have a heightened duty of care to children and their families from harm and or from foreseeable harm.
- Defendants' knowledge of Mr. Lafayette's disability in 2019 and providing a reasonable accommodation at that date implies a duty of care to provide such accommodation.
- Defendant's Blueprint Basketball, Cara Caswell and BJ Robertson breached their duty of care by failing to provide a reasonable accommodation.
- Defendant's Blueprint Basketball, Cara Caswell and BJ Robertson breached their duty of care to act reasonably to protect the wellbeing of its members. Defendants instead acted in the perverse to disrupt the development of another student athlete, in competition with their own children, based on

associative discrimination and as evidenced by the public communication alert disseminated to other youth programs encouraging said programs to not accept Mr. Lafayette or son into programs. The effort proved successful as evidenced in Exhibit B.

REMEDY REQUESTED

WHEREFORE, Plaintiff, Mr. Lafayette, respectfully demands that this Cour enter judgment against Defendants Blueprint Basketball, Cara Caswell and BJ Robertson and award:

1. Compensatory Damages $25,000.00
2. Punitive Damages of $75,000.00
3. Enjoin Blueprint Basketball to reinstate Mr. Lafayette's son forthwith.

A jury trial is demanded on all counts so triable.

Dated this 2nd day of January, **2024**.

Respectfully submitted,

_R. J. Lu_    2/12/24

Robert Lafayette